UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| L.S.M. a minor by his mother | ) | |
| THERESA E. ELZY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 1:10-cv-01593-MJD-JMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Claimant L.S.M., a minor, by his mother Theresa E. Elzy, requests judicial review of the

final decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act ("the Act"), 42 U.S.C. § 1382.[1]  For the following reasons, the Court **REVERSES**

and **REMANDS** the decision of the Commissioner for further proceedings.

## I.      BACKGROUND

### A.  Procedural History

On June 12, 2007, Elzy filed an application for SSI on behalf of the Claimant, a child

under age eighteen, alleging a disability onset date of March 1, 1999.  The Social Security

Administration ("SSA") denied his claim initially and upon reconsideration.  Thereafter, the

Claimant filed a written request for a hearing which was held on December 3, 2009 by

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in
accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

Administrative Law Judge ("ALJ") Ronald T. Jordan. The ALJ found that Claimant was not disabled since his application date, and on October 29, 2010 the Appeals Council denied Claimant's request for review of the ALJ's decision, thus making it the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 416.1481. On December 10, 2010, Claimant filed this appeal requesting judicial review pursuant to 42 U.S.C. §405(g).

## B. Factual and Medical Background

Claimant had previously received SSI, but the SSA terminated his benefits when he was eight or nine years old because it determined that he was no longer disabled. At the time of the hearing, Claimant was in the eighth grade at Key Learning Center, where he had attended for approximately four years. He had been held back in eighth grade the prior year for failure to turn in homework. Before attending Key Learning Center, Claimant attended Boys' School for a year as a result of behavioral problems. Claimant had behavioral problems at school; however, he testified and acknowledged that he was able to behave himself outside of school.

In February 2005 when Claimant was in fourth grade, he was referred for an evaluation at his teacher's request because she suspected Claimant had an emotional disability. Claimant's mother reported that she was concerned about his negative attitude and poor classroom behavior, and his teacher reported that Claimant was a bright student who was not succeeding academically due to constant classroom behavior problems. At the evaluation, Claimant was pleasant and showed expressive and good quality language. He expressed positive feelings about school, admitted that he frequently got into trouble and that he was trying to improve his behavior. Claimant's test results showed average intellectual ability, somewhat below average visual memory skills, and well-developed memory auditory memory skills. Achievement testing

showed that Claimant's math skills were at a fifth-grade level and that his reading skills were at a sixth-grade level.

During the evaluation, Claimant's behavior was rated with the Conners' Rating scale using information provided by his mother and teacher. Hyperactivity and impulsive behavior were the two areas of most concern, with additional concerns with oppositional behavior and emotional instability. Claimant frequently got into fights, cried often and easily, and actively defied adult requests. Additional tests indicated that Claimant set unrealistic goals; felt alienated; might internalize feelings of depression and later externalize them as anger and aggression; had difficulty conceptualizing and coping with problem situations; and appeared to be highly anxious; but also showed no difficulty with reality orientation or thought processes.

Claimant's school's principal, psychologist, counselor, general education teacher, and resource teacher also completed a multi-disciplinary evaluation team ("MET") report as part of the evaluation at Claimant's school. The report stated that Claimant's strengths were "average intelligence, academics, and can be helpful" and his challenges were "poor interaction with peers, will bully them; physically aggressive; not truthful; does not complete homework; and overreacts to correction." The MET report suggested that Claimant possibly pursue services to address his depression and anxiety.

In 2006 when Claimant was in sixth grade, his academic progress was steady in the majority of his school subjects, but showed slow progress or a need for help in linguistics and music. In September 2006, Claimant was forty-three points short of a passing score in English and five points short of a passing score in mathematics on the Indiana Statewide Testing Exam

for Educational Progress ("ISTEP"). In the second semester of sixth grade, Claimant was suspended on three separate occasions, twice for fighting and once for inappropriate language.

On September 7, 2007, consulting psychologist Dr. Phillip Vandivier examined the Claimant. Claimant reported that in 2005 he spent three weeks at Valle Vista psychiatric hospital for behavioral problems, and also received outpatient treatment in February 2004 and June 2005 for behavior problems, and in June 2006 for anger management. Claimant reported that he used to take Adderall and Ritalin for attention deficit hyperactivity disorder ("ADHD"), but discontinued them due to adverse side effects including insomnia, mood swings, and suicidal thoughts. Claimant's mother reported that he had difficulty with linguistics and concentration, and could not sit still or complete his work. Claimant reported no problems with dressing independently, but his mother stated that he needed reminders to bathe every night. Dr. Vandivier observed that Claimant was appropriately dressed and groomed; had low-average attention and concentration skills; persisted in all tasks with no more than usual prodding; had normal activity level; had considerable task involvement and appeared to enjoy his success in performing mental status items. Dr. Vandivier further observed that Claimant had normal affect and mood; did not appear to be overly anxious; showed no clinical indicators of significant depression; related in a friendly, cooperative manner; and had normal speech and thought processes. Dr. Vandivier opined that Claimant did not show any indicators of ADHD or emotional or behavioral problems. He diagnosed Claimant with disruptive behavior disorder and assigned him a Global Assessment of Functioning ("GAF") score of eighty, indicating a slight impairment in social, occupational, or school functioning.

Two weeks after his consultation with Dr. Vandivier, Claimant's mother took him to Gallahue Mental Health Services, indicating that he wrote a note with a suicide reference.

Claimant's mother completed some paperwork, but then left because she had a headache and the Claimant was hungry and irritable. When she was contacted by a social worker, Claimant's mother indicated that she would supervise him herself.

On October 15, 2007, consulting physician Dr. Sandeep Gupta examined the Claimant. Claimant's mother reported that Claimant continued to have anger problems, acted out, and had expressed suicidal ideation two weeks prior to the examination. Dr. Gupta noted that Claimant was well-behaved, comfortable and cooperative during the examination and that his physical exam was normal. He noted that Claimant was getting suspended from school and was intolerant of medication. Dr. Gupta's "clinical impression" was ADHD with behavioral and emotional problems. He noted that Claimant was reportedly going to try new medications and begin going to counseling.

On November 27, 2007, state agency reviewing psychologist Dr. J. Gange, Ph.D. and reviewing physician Dr. Steven Rouch, M.D. opined that Claimant's impairments did not meet, medically equal or functionally equal the Listings. They opined that Claimant's degree of limitation in acquiring and using information was less than marked; that he had a less than marked limitation in interacting and relating with others; no limitation in the domains of moving about and manipulating objects and in caring for himself; and no limitation in health and physical well-being. In January 2008, state reviewing psychologist Dr. F. Kladder, Ph.D. and reviewing physician Dr. G. Wilson, M.D. made the same findings as Dr. Gange and Dr. Rouch.

Between January 2008 and May 2009, Claimant was sent to the student learning center and/or suspended seventeen times for various behavior problems, including dress code violations, talking back to teachers, disrespectful and disruptive behavior, inappropriate

language, tardiness, horseplay, and refusing to follow verbal requests. A progress report from the winter semester of the 2007-08 school year showed that Claimant had slow progress or a need for help in four school subjects and steady progress in four subjects. A progress report from the spring 2008 semester showed mostly steady progress in school subjects. In fall of the 2008-09 school year, Claimant had mostly steady progress in his school subjects. A progress report from the winter semesters in the 2008-09 school year showed slow progress or a need for help primarily in three subjects, and mostly steady progress in the remaining subjects. A progress report from the spring 2009 semester showed that due to absences and lack of effort, Claimant had incomplete work in several classes, but mostly steady progress in the remaining subjects.

On May 22, 2009, social worker Cherie Patrick evaluated Claimant at Gallahue Mental Health Services for depressive symptoms, cutting, suicidal ideation and anger. Patrick diagnosed Claimant with depressive order not otherwise specified ("NOS") with secondary diagnoses of ADHD by history and rule out, and oppositional defiant disorder ("ODD"). Patrick assigned Claimant a GAF score of fifty-five, which is indicative of moderate to serious impairment in social, occupational, or school functioning. His treatment plan consisted of individual, family and group therapy, and medication management. On June 15, 2009, Patrick again saw Claimant, where she observed that he had a sad mood; flat affect; fair judgment, insight, and impulse control; appropriate thought content and processes; and a cooperative attitude. His GAF score and treatment plan remained the same. In July 2009, Claimant reported to Patrick feelings of isolation and abandonment after spending two weeks with his father. She referred him to an anger management group and did not change his GAF score. Claimant did not attend the anger management class.

On September 1, 2009, after being informed of additional behavioral problems by Claimant's mother, Patrick again recommended that Claimant undergo a medication evaluation, and assigned him a GAF score of 56. Patrick began working on Claimant's depressive symptoms with cognitive behavioral therapy and noted that progress was minimal. Patrick and an unidentified physician completed a psychiatric evaluation and treatment plan in which they diagnosed Claimant with mood disorder NOS, a secondary diagnosis of ODD, tertiary diagnoses of a history of childhood sexual abuse by his older brother at age four, rule out mixed bipolar disorder, post-traumatic stress disorder ("PTSD") and ADHD. They assigned Claimant a GAF score of 50 and prescribed him Lexapro. Patrick saw Claimant in November 2009 and he reported that he had stopped taking his medication. Patrick observed that Claimant had poor judgment and treatment compliance, and again urged him to attend anger management regularly. She again assigned him a GAF score of 55.

## II.      DISABILITY AND STANDARD OF REVIEW

An individual under the age of eighteen (a "child") is disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To satisfy this standard, a child must show that (1) he is not engaged in performing substantial gainful activity; (2) he has a severe medically determinable impairment; and (3) his impairments meet, medically equal, or functionally equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a)-(d). At the third step of this evaluation, if a child's impairment does not meet or medically equal any Listing, the ALJ must determine whether the child's impairment functionally equals a Listing by considering how the child functions in six

domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). "To find an impairment functionally equivalent to a [L]isting, an ALJ must ... find an 'extreme' limitation in one category or a 'marked' limitation in two categories." *Brindisi v. Barnhart,* 315 F.3d 783, 785 (7th Cir. 2003) (citing 20 C.F.R. § 416.926a(a)).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir.1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401(1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz,* 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler,* 768 F.2d 172, 179 (7th Cir. 1985).

### III.    THE ALJ'S DECISION

The ALJ determined at step one that the Claimant has not engaged in substantial gainful activity since the application date.  At step two, the ALJ determined that the Claimant has the following severe impairments: disruptive behavior disorder, depression NOS, cannabis abuse, and history of ADHD.  At step three, the ALJ concluded that the Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.924, 416.925, 416.926.  The ALJ concluded that Claimant does not have the required extreme or marked functional limitations described in section 112.02B2 for Listings 112.04 (major depression), 112.08 (personality disorder), 112.09 (psychoactive substance dependence disorder) and 112.11 (attention deficit hyperactivity disorder).  The ALJ also found that Claimant does not have an impairment or combination of impairments that functionally equals the Listings. 20 C.F.R. §§ 416.924(d) and 416.926(a).  In going through the six domains, he found that Claimant has less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and no limitation in health and physical well-being.

### IV.    DISCUSSION

Claimant presents four arguments as to why he believes the ALJ committed reversible error.  He claims that (1) he was treated unjustly and unfairly when the ALJ ignored or misstated evidence showing that his combined impairments rendered him disabled; (2) the ALJ erred in not summoning a medical expert; and (3) the ALJ made a flawed credibility determination.

**A. Unjust and Unfair Treatment by the ALJ in Ignoring or Misstating Evidence Allegedly Showing That Claimant's Combined Impairments Rendered Him Disabled**

Claimant argues that the ALJ's decision must be reversed because he acted unfairly by misstating and ignoring evidence proving the Claimant's disability. Claimant's arguments are undeveloped conclusory assertions rather than actual analysis as to how and why the ALJ's decision was "obviously unfair." [Dkt. 19 at 35]. The Court declines to address these arguments and finds that Claimant has waived them by failing to develop the analysis. *See D.O.B. ex rel. Dudley v. Astrue*, No. 1:10-cv-01142-WTL-TAB, 2011 WL 3739366, at *1 n.3 (S.D. Ind. August 3, 2011); *Elliott v. Astrue*, No. 1:09-cv-653-SEB-DML, 2010 WL 3893801, at *6 (S.D. Ind. Sept. 29, 2010). Claimant's allegation that the ALJ's decision was not supported by substantial evidence does not automatically lead to the conclusion that Claimant was treated unjustly and unfairly.

**B. Failure to Summon a Medical Advisor**

Claimant asserts that the ALJ was required to summon a psychologist as a medical expert to testify as to whether his combined impairments medically equaled or functionally equaled a listed impairment.[2] Further, he argues that, because no medical expert testified at Claimant's hearing, the ALJ's step three findings were based upon his layman's opinion, and that the ALJ simply assumed the absence of medical equivalency.

State-agency physicians reviewed the evidence and determined that Claimant's impairments, individually or in combination, did not meet or medically equal any of the

---

[2] Claimant also alleges that the ALJ should have summoned a pulmonologist [Dkt. 19 at 22]; however, Claimant's respiratory problems were not at issue in this appeal.

conditions in the Listing of Impairments. It has been well established that the signature of a state agency medical consultant on a Disability Determination and Transmittal Form ensures that a physician has considered the question of medical equivalence at the initial and reconsideration stages of administrative review, and satisfies the requirement that an ALJ obtain expert medical opinion on the subject of medical equivalence. *See* 20 C.F.R. 404.1527(f)(2)(1); Social Security Ruling 96-6p, 86-8; *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004); *Scott v. Sullivan,* 989 F.2d 519, 524 (7th Cir. 1990). The decision to use a medical expert is discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that he must do so. *See* 20 C.F.R. 416.927(f)(2)(iii). The ALJ is not required to provide reasons for accepting the state agency physicians' opinions as to medical equivalence. *Scheck*, 357 F.3d at 700-01. Therefore, the ALJ did not err in failing to summon a medical expert to determine medical equivalency.

## C. Insufficient credibility determination

Claimant asserts that the ALJ erred by failing to make a creditability determination. A reviewing court may reverse an ALJ's credibility determination only if it is so lacking in explanation or support that it is "patently wrong." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009); *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). It is essential that the ALJ articulate specific reasons for crediting or rejecting particular sources of evidence, even when there are strong grounds upon which the ALJ may have rejected the claimant's evidence. *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). The district court must defer to the ALJ's credibility determination; however, the Court must first be certain that a credibility determination has actually been made. *Schroeter v. Sullivan*, 977 F.2d 391, 395 (7th Cir. 1992). Without

explicit findings regarding why the ALJ disregarded claimant's testimony, the court cannot presume that the ALJ believed or disbelieved this evidence. *Id.*

The ALJ considered a number of facts in making his determination that the Claimant was not disabled, including statements by the Claimant and his mother, medical records, school reports, and the ALJ's observations at the hearing. However, it is not clear from the ALJ's analysis of the Claimant's functioning in the six domains that he made a specific credibility finding, and it is not clear what weight the ALJ gave to the Claimant's and his mother's statements and the reasons for giving that weight. Administrative law judges must carefully evaluate all evidence bearing on the severity of the claimant's symptoms and give specific reasons for discounting a claimant's testimony about it. *Martinez v. Astrue,* 630 F.3d 693, 697 (7th Cir. 2011). The ALJ does not clearly indicate which statements made by Claimant and his mother in support of a finding of disability were inconsistent with the evidence cited by the ALJ. The Commissioner's brief even acknowledges that the ALJ did not make an explicit credibility finding, but instead focuses on the evidence that the ALJ did rely upon in making his decision. [Dkt. 26 at 23]. Although the evidence cited by the ALJ may support his determination, this Court is not in a position to reweigh the evidence and make such a credibility finding on behalf of the ALJ. Thus, the ALJ committed reversible error by failing to make a specific credibility determination in his opinion.

## V.  CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision of the Commissioner for further proceedings consistent with this order.

Dated: 12/30/2011

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com